## FARMER *vs.* WORD.

S. contracted to sell to McF. a tract of land, gave him a bond for title, and took his notes. McF. contracted to sell the land to F., and in turn, gave him a bond for title, and took his notes. One of these notes was transferred to W. Subsequently, McF. having only paid S. a small part of the interest that had accrued on the notes given by him, canceled the contract made with S., delivered up the bond for titles, and received his notes. It does not appear that F. had any connection with this cancellation, or knew that his note had been transferred. Subsequently to this, S. contracted to sell the land to F., made a bond for title to him, and received notes from him. Having paid to S. a part of the purchase money, F. took a homestead on his interest in the land. W. sued on the note of F. held by him, obtained a judgment, and levied on the land:

*Held*, that such debt was not for purchase money, so as to subject the land. When McF. sold to F., he had no title, but only an imperfect equity; this ceased upon the cancellation of the trade with S., and the subsequent sale by S. to F. did not make the note of F. to McF. a debt for purchase money.

September 11, 1883.

Homestead. Title. Contracts. Before Judge HUTCHINS. Franklin Superior Court. April Term, 1883.

Reported in the decision.

J. B. PARKS; A. S. ERWIN, for plaintiff in error.

W. R. LITTLE; W. I. PIKE, for defendant.

HALL, Justice.

Sewell contracted with McFarland to sell him a certain tract of land, taking his notes therefor, and making him the usual bond to convey upon payment of the notes. Thereafter, McFarland contracted to sell the same land to Farmer, and took from him his notes, and made to him a bond to make title upon payment of his notes. One of these notes for $500.00 was transferred, before due, for value, and without notice of any defence, to Word. Word brought suit on this note, and obtained judgment against Farmer, who made no defence to the suit. McFarland did not assign Sewell's bond to Farmer, but kept possession of the same; and after the transfer of Farmer's note to Word, he canceled the contract for the sale of the land with Sewell, received his notes to Sewell, and delivered him his bond to make title to the land, never having paid Sewell anything except a small part of the interest that had accrued on the notes given for the purchase money. It does not appear that Farmer had anything to do with the canceling of this trade; but after its cancellation, he contracted with Sewell for the purchase of the same land, giving him his notes for the purchase money, and taking his bond for the conveyance of the same, when the notes were paid. From the agreed statement of facts in the case, it does not appear that Farmer, at the time of this contract with Sewell, knew anything of the transfer of the notes, given by him to McFarland, to Word. Having paid Sewell a part of the purchase money, he laid a homestead upon his interest in the land so purchased, as last aforesaid, for the benefit of his wife and minor children, under the constitution and laws of the state. Word levied the *fi. fa.* issuing upon the judgment in his favor upon the land so set apart as a homestead; and to this *fi. fa.* Farmer interposed his affidavit of illegality, among others, upon the ground that the land levied upon had been set apart as a homestead, and was not subject to sale under the levy.

v 72-3

The lower court, who tried this issue, by consent of counsel, without a jury, held the land subject, notwithstanding the homestead, solely upon the ground that the note, the foundation of Word's judgment, was given for the purchase money of the land, overruled the affidavit of illegality, and ordered the levy to proceed. To this decision Farmer excepted; and the point presented for our decision is whether the note given by Farmer to McFarland was any part of the purchase money of the land.

By Art. IX., §2, paragraph 1, of the constitution of 1877, Code §5211, the homestead set apart thereunder is, among other things, subject to levy and sale for the purchase money of the same; as it is likewise "for the removal of incumbrances thereon."

In our view of this case, Farmer purchased from McFarland nothing but the right of the latter to have a conveyance to the land in question, when McFarland should entitle himself to such conveyance by complying with the conditions of the contract with Sewell, which he never did. Farmer's contract with him could have been only for a bare right or imperfect equity. McFarland had no title to the land; he had nothing but the naked possession, coupled with this right or equity. The possession was all he could transfer, which was subject to be terminated, whenever the condition upon which it was held was broken. McFarland never had any lien upon this land for the amount of this note; it was not encumbered with the payment of the purchase money. Sewell held this lien and incumbrance; his title to the land was his security for the purchase money, and Word was not the assignee of Sewell, but of the man who owed him this obligation. Neither McFarland nor Farmer could have claimed this exemption against Sewell, and certainly Word, who was the mere transferee of whatever right McFarland had, could not do so.

When McFarland failed to comply with his contract, Sewell had the right either to enforce it by law, or to can-

Farmer vs. Word.

cel it by an arrangement with the opposite party; and when it had been thus canceled, he held his title unfettered from any obligation to convey to McFarland, or any one claiming under him, either directly or indirectly. He had the perfect right then to sell to whomsoever he pleased, and why not sell to Farmer as well as a person who had never had any connection with the property? The question here is not whether Farmer's property outside of this homestead is subject to this judgment, but whether this homestead, based upon an equity to have a title upon compliance with his contract with Sewell, from and through whom he derives this right, is so subject. If he had purchased the right from any third person, it certainly would not be contended that it would be subject. How, then, could the fact that McFarland, to whom this note was given, on account of his casual connection with the property, be said to have an incumbrance or lien for the purchase money? We think it is only the legal owner of the property, or one who has a perfect equity to it, or his assignee, that can levy on or sell a homestead upon it for the unpaid purchase money. Were it otherwise, any number of assignees of bonds for titles, together with the transferees of the securities taken upon a sale of the bare right to have it conveyed, might with equal propriety insist upon such a claim.

It follows, from these views, that the decision of the court below was erroneous; that the execution in question was not founded on a judgment given for the purchase money of the homestead; that the right to the land upon which the homestead was taken was never in McFarland, and that Farmer does not hold under him, but under Sewell.

Judgment reversed.